IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | | |
|---|---|---|
| DAVID ALLEN GABBARD and<br>DIANA MUNCY<br><br>PLAINTIFFS,<br><br><br>SCOTT TOWNSLEY<br>in his individual and official capacity,<br>JOSHUA S. ROADEN<br>in his individual and official capacity,<br>BRANDON R. SCALF<br>in his individual and official capacity,<br><br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br>C.A. No.____________________<br><br><br><br>VERIFIED COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

COMPLAINT

INTRODUCTION

1. Plaintiff's David Gabbard and Diana Muncy (collectively "Plaintiffs" or "Mr. Gabbard" or "Ms. Muncy" respectively as individuals) bring this action against Kentucky State Police Troopers Scott Townsley, Joshua Roaden and Brandon Scalf (collectively the "Troopers") for their part in trespassing on Plaintiffs' property and violating their 4th Amendment rights as well as violating Mr. Gabbards 1st Amendment rights by going to Plaintiffs' residence, assaulting and battering Mr. Gabbard, kicking the Plaintiffs dog, invading the privacy of Ms. Muncy, wrongfully confiscating Ms. Muncy's phone so that she could not record the events transpiring or call 911 for help, and attempting to goad Mr. Gabbard into a responding to Trooper Townnsley's physical, mental and

emotional abuse because Trooper Townsley took offense at a face book post that Mr. Gabbard made on Facebook.

JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. §1983.

3. Venue is proper under 28 U.S.C. § 1391(b) and LR 3.2. At least one Defendant resides within this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted herein all occurred within this judicial district.

4. Plaintiffs' claims for relief are predicated upon 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, or rights, privileges and immunities secured to Plaintiffs by the First, Fourth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States.

5. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages, against all Defendants.

6. Plaintiffs' claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

FACTS

3. On or about September 16, 2017 around 7:00 p.m. Trooper Townsley stopped Mr. Gabbard on the roadway near his home for uncertain purposes.

4. During this roadside stop, Trooper Townsley requested permission to search Mr. Gabbard's car and Mr. Gabbard gave him permission to do so.

5. Trooper Townsley did not find any illegal substances or items as a result of the search of Mr. Gabbard's vehicle and released Mr. Gabbard who then went home.

6. When at home, at approximately 7:53 p.m. Mr. Gabbard made the following post on his Facebook page: "Just love being pulled over for no reason lmao.#maybenexttime. #policeharasment."

7. Mr. Gabbard never mentioned the Kentucky State Police or Trooper Townsley in the post or any comments about the post.

8. On September 17, 2017 at about 5:00 p.m. the Troopers appeared at Mr. Gabbard and Ms. Muncy's residence without cause or legal justification, and under color of authority, while in their uniforms, trespassed upon the private property of Mr. Gabbard and Ms. Muncy.

9. Trooper Townsley approached the front of the residence while Troopers Scalf and Roaden moved around the perimeter of the house only to see Ms. Muncy through her bedroom window in a state of undress.

10. Plaintiffs live in a secluded rural area with no immediately close neighbors and often leave their windows open because there is no one around to see inside.

11. Upon seeing Ms. Muncy, Troopers Scalf and Roaden yelled at her to put some clothes on and then returned to the front of the house.

12. The Troopers had no legitimate reason to be on the Plaintiff's property.

13. Mr. Gabbard stepped outside of his home and confronted Trooper Townsley asking him why he was there and requesting that he leave his property.

14. Ms. Muncy came outside and started recording on her cell phone. On the cell phone recording Trooper Townsley can be heard saying "I did not harass you yesterday" "I don't care everybody knew what you meant." "I knew what you meant… that's the only thing . I knew what you meant." Then a pause and "Well like I said…" then Trooper Scalf takes Ms. Muncy's phone and turns off the recording.

15. After the phone recording was turned off things quickly escalated and with Trooper Townsley verbally accosting Mr. Gabbard, slapping him in the head, kicking his small dog, and doing everything in his power to incite Mr. Gabbard into a physical confrontation. Mr. Gabbard's response was exemplary and he refused to engage in a physical confrontation stating the he "did not want to fight the police", which prompted Trooper Townsley to remove his badge and gun and offer to fight Mr. Gabbard as a regular citizen.

16. After Trooper Scalf took her phone, Ms. Muncy went inside and called 911, but because the police were already present – even though for nefarious purposes – the dispatcher would not send anyone out to the premises. (**Exhibit A** – Transcript of 911 Call)

17. Only after Trooper Scalf spotted the video cameras posted at the front of Plaintiff's home, did anyone take any steps to stop this grotesque abuse of police authority, and Trooper Scalf stepped in to try and calm Trooper Townsley down and pointed out the video cameras.

18. Shortly after the video cameras were spotted the Troopers gathered up Trooper Townsley's badge and gun and left the premises.

19. Defendants Townsley, Scalf and Roaden acted with the intent to injure, vex, annoy, harass and terrorize Plaintiffs, and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention of causing Plaintiffs injury and depriving them of their constitutional rights.

20. The Troopers caused extreme distress for the Plaintiffs not only because of the trespass and violation of their constitutional rights, but because they tried to call 911 for help and no one would come to stop the Troopers.

21. Ms. Muncy was already in a fragile state of emotional and mental health because she had witnessed her estranged husband murdered by her then boyfriend and was a witness for the prosecution in the trial of her boyfriend.

22. As a direct cause of the Trooper's actions Ms. Muncy has experienced extreme emotional distress, mental trauma and anguish.

23. One of the foundations of the relationship between Ms. Muncy and Mr. Gabbard was that Mr. Gabbard always told her that he would protect her, and he worked very hard to make her feel safe.

24. Mr. Gabbard's ability to keep Ms. Muncy safe was completely destroyed and neutered by the actions of the Troopers.

25. Three men came to Plaintiff's residence with the intent to do Mr. Gabbard bodily harm – and they were helpless to do anything about it.

26. This sense of helplessness and impotence has cause Mr. Gabbard to suffer symptoms of depression for which he is now being treated.

27. The Trooper's actions also deprived Ms. Muncy of faith in Mr. Gabbard's ability to keep her safe.

28. In short, the Trooper's actions robbed the Plaintiffs of their constitutional right to be secure in their person and house, not only against unreasonable searches and seizures but against violence and wrongful intrusion for nefarious purposes.

COUNT I

CLAIM FOR RELIEF PURSUANT TO 42 U.S.C. §1983

29. Plaintiff incorporates by reference paragraphs 1-32 as though fully restated herein.

30. 42 U.S.C. § 1983 provides that every person under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any citizen of the Unites States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

31. The First Amendment of the United States Constitution provides that Congress shall make no law "abridging the freedom of speech."

32. The Fourth Amendment of the United States Constitution provides the right of people to be secure in their persons and houses against unreasonable searches and seizures.

33. The 14th amendment of the United States Constitution provides that not State shall enforce any law which abridges the privileges or immunities of United States Citizens, which includes the First and Fourth Amendment rights to freedom of speech and to be secure in their homes against unreasonable searches and seizures.

34. The 14th amendment goes further to provide that no State shall deprive any person of life, liberty or property without due process of law.

35. The Troopers, dressed in their Kentucky State Police uniforms, wearing their badges and armed with their guns did trespass upon the property of the Plaintiffs without cause or justification and subjected the Plaintiffs to harassment, intimidation and physical abuse as more fully described above in an attempt to seek retribution against Mr. Gabbard for exercising his first amendment right to free speech via a Facebook post.

36. The Troopers' actions, under color of law, violated Plaintiff's right to be secure in their home, to be free from unreasonable searches and seizures in the following ways:

a. Troopers Scalf and Roaden searched Plaintiffs' home by going around the perimeter of the house. They did not have a warrant or probable cause to do so. By initiating this search, they caught Ms. Muncy in a state of undress causing her shock, embarrassment, humiliation and fear.

b. Trooper Scalf seized Ms. Muncy's phone without probable cause or a warrant when he took the phone from her and turned off the recording.

c. The Troopers violated Mr. Gabbard's first amendment right to free speech by trespassing onto his property to intimidate, harass and physically batter him and his pet in retribution for a Facebook post he made in response to Trooper Townsley's stop of his vehicle the day before.

d. The Troopers actions all served to deprive Mr. Gabbard and Ms. Muncy of their constitutional liberty and property rights by trespassing onto Plaintiff's property and verbally and physically antagonizing Mr. Gabbard, and confiscating Ms. Muncy's phone all without cause or justification.

37. The Troopers violated Plaintiffs' civil rights and deprived the Plaintiffs of their civil rights and privileges under the color of the authority of law and caused Plaintiffs extensive emotional and psychological distress and harm in the form of:

a. Ms. Muncy, already in a fragile state of mind and mental health, now feels extreme anxiety and terror in her own home because the Troopers showed her that Mr. Gabbard was really no protection for her at all, and that even 911 would not respond to help her against the power of these Troopers.

b. Mr. Gabbard is experiencing depression, anxiety and terror, because the Troopers have delivered their message to him loud and clear – "we can get you". The Troopers were able to come onto his property and threaten him, slap him around, search his premises without justification and he was powerless to stop them and to protect his family. The Troopers proved to Mr. Gabbard that he was impotent against the power of the Kentucky State Police being brought to bear upon him for no legitimate reason in violation of his constitutional rights.

COUNT II

BATTERY

TROOPER TOWNSELY

38. Plaintiffs incorporate by reference paragraphs 1-37 as though fully restated herein.

39. Trooper Townsley battered Plaintiff, David Gabbard, when he pushed Mr. Gabbard and slapped him in the head.

40. Pushing and slapping Mr. Gabbard was an unwanted touching.

41. Trooper Townsley had no valid justification for slapping and pushing Mr. Gabbard.

42. Because of Trooper Townsley's battery Mr. Gabbard has suffered humiliation, embarrassment, loss of dignity, terror, loss of the respect and confidence from his wife that he could protect her, as well as extreme emotional distress and depression.

COUNT III

ASSAULT

ALL DEFENDANTS

43. Plaintiffs incorporate paragraphs 1-42 as though fully restated herein.

44. Trooper Townsley assaulted Mr. Gabbard by approaching Mr. Gabbard with the intent to create a state of fear, terror and/or danger in Mr. Gabbard;

45. The Troopers assaulted both Plaintiffs by coming to Plaintiffs home with the intent to intimidate and terrorize Mr. Gabbard for his Facebook post.

46. The Troopers intended to instill fear, terror, danger and distress into the Plaintiffs by their presence on the property.

47. Trooper Townsley's actions caused reasonable apprehension of harm by Mr. Gabbard.

48. The Troopers collective actions served as a show of force for the sole purpose of intimidating and terrorizing the Plaintiffs in response to Mr. Gabbard's Facebook post.

49. The only plausible explanation for the Troopers presence at the Plaintiffs' home was that the Troopers wanted to deliver a message through intimidation, terror and battery.

50. The Troopers conduct did in fact cause Plaintiffs to feel intimidated and terrorized.

51. Exacerbating the Plaintiffs' apprehension of fear and terror was that 911 would not respond to the home because the State Police were present.

52. The Plaintiffs' incurred damages because of the assault by the Troopers in the form of humiliation, embarrassment, loss of dignity, terror, extreme emotional distress, anxiety and an overall loss of confidence in the legal system to protect them.

COUNT III

TRESPASS

ALL DEFENDANTS

53. Plaintiffs incorporate by reference paragraphs 1-52 as though fully restated herein.

54. Plaintiffs have the right of exclusive use of their property.

55. The Troopers entered upon the Plaintiffs' residence without justification or cause under the color of law.

56. The Troopers did not just enter on the property and knock on the door, rather they went around the perimeter of the house and conducted a search.

57. Once the Plaintiffs realized that the Troopers were on their property, the Plaintiffs demanded that the Troopers leave their property.

58. The Troopers refused to leave the property when requested to do so by the Plaintiffs.

59. The Troopers saw Ms. Muncy in a state of undress because of the trespass, causing her extreme embarrassment, humiliation and outrage.

60. The Troopers violated the Plaintiffs right of exclusive possession of their property by entering onto the Plaintiffs' property.

61. By trespassing on Plaintiffs' property, the Troopers were able to intimidate, harass and terrorize Plaintiffs.

COUNT IV

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

ALL DEFENDANTS

62. Plaintiffs incorporate by reference paragraphs 1-61 as though fully restated herein.

63. The Troopers came to Plaintiffs' home to intimidate, harass and terrorize the Plaintiffs.

64. The Troopers conduct was intentional.

65. The Troopers went to Plaintiffs' home to deliver a beat down and were only stopped because they thought Plaintiffs had working security cameras.

66. 911 would not respond to the scene because the State Police were present.

67. The Plaintiffs were completely at the Troopers' mercy and the Troopers were there to intimidate, harass and terrorize Plaintiffs.

68. The Troopers' conduct was outrageous.

69. The Troopers' conduct caused Plaintiffs to suffer extreme emotional distress in the form of humiliation, anxiety, depression, a sense of impotence, terror and a complete

loss of confidence in the ability or willingness of our government and police to protect Plaintiffs from harm.

WHEREFORE, Plaintiffs pray to this honorable court as follows:

1. Judgement against all Defendants herein, jointly and severally for damages for pain and suffering to be determined by a jury;

2. Judgement against all Defendants herein, jointly and severally for punitive damages to be determined by a jury;

3. A trial by Jury;

4. Reimbursement for legal fees and costs so wrongfully incurred; and

5. Any and all other relief to which Plaintiffs may be entitled

Respectfully submitted,

/s/ James O'Toole

James O'Toole
Smith & O'Toole, PLLC
2333 Alexandria Dr.
Lexington, Ky 40504
(859) 514-6072
jotoole@smithotoole.com

**VERIFICATION**

The undersigned do hereby solemnly swear that the facts and allegations in the foregoing complaint are true and accurate to the best of their knowledge, information and belief.

David Gabbard

Diana Muncy

COMMONWEALTH OF KENTUCKY

COUNTY OF Madison

The foregoing Complaint was acknowledged before me on 2d Day of July, 2018 by David Gabbard.

Daniel V. Smith
Notary Public, ID No. 555384
State at Large, Kentucky
My Commission Expires on April 19, 2020

NOTARY PUBLIC
STATE AT LARGE
My commission expires: 4-19-20

COMMONWEALTH OF KENTUCKY

COUNTY OF Madison

The foregoing Complaint was acknowledged before me on 2d Day of July, 2018 by Diana Muncy.

Daniel V. Smith
Notary Public, ID No. 555384
State at Large, Kentucky
My Commission Expires on April 19, 2020

NOTARY PUBLIC
STATE AT LARGE
My commission expires: 4-19-20

# EXHIBIT A

Unknown Female', '', '', 'McKee', 'Ky', '6064938321', '', 0, 0, 37.430364, -83.99798340000001, '2017-09-17 17:56:58', '2017-09-17 17:50:00', '2017-09-17 17:58:
00', '17-5554 /KSP Transfer/', NULL, '[17:36] female called and advised that troopers Scalf Townsley and Rowden she advised they pulled her husband over
lastnight and they are trying to fight her husband she advised Townsley pulled off his belt and threw it on the ground saying that he is trying to fight her
and when she tried to record it Scalf took her phone and would not give it back to her she advised she needs something done about them out here harassing her
husband--transferred her over to Post 7', '98', 'Yes', 1, 0, 0, '2017-09-17 17:58:40', NULL, 50),

Diana Muncy','1802 LEGER FORK RD', '', 'TYNER', 'Ky', '6064938321', '', 0, 0, 37.334466, -83.850729, '2017-09-17 19:02:32', '2017-09-17 18:36:00', '2017-09-17
19:08:00', '17-5555 /Assault//Sheriff/', NULL, '[18:00] female called and advised that she needs to report an assault that a state trooper done to her fiance
she advised that 3 state troopers, scalf, rowden and townsley came to her house and townsley tried to start a fight with her man she advised he took his belt
off and threw it down and slapped him in the face she said that officer scalf took her phone as she was trying to record this happening and wouldnt give it
back to her--her fiance''s name is David Gabbard she said this is over a facebook post and they pulled him over yesterday\r\n\r\n[18:04] advised 102 of this
traffic he asked if i advised assault by a trooper i advised 10-4 thats what the caller said he advised he would see whats going on\r\n\r\n[18:41] 102 called
and advised that the supervisor of state police is taking care of this complaint\r\n\r\n also refers to CAD # 17-5554', '98', 'Yes', 1, 0, 2, '2017-09-17
19:08:47', '2017-09-17 19:07:00', 50),